

JOHN F. MEADOWS, SBN 23050
LEOPOLDO J. CHANCO, SBN 136083
SINUNU BRUNI LLP
333 Pine Street, Suite 400
San Francisco, CA 94104-3311
Telephone: 415.362.9700
Facsimile: 415.362.9707
jmeadows@sinunubrui.com
lchanco@sinunubruni.com

Attorneys for Plaintiff
CAPTAIN JOHN J. COTA

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CAPTAIN JOHN J. COTA,<br><br>       Plaintiff,<br><br>       v.<br><br>UNITED STATES OF AMERICA,<br>DEPARTMENT OF HOMELAND<br>SECURITY, UNITED STATES COAST<br>GUARD, AND UNITED STATES COAST<br>GUARD COMMANDANT,<br><br>       Defendants. | Case No.: **C 13   0576**<br><br>**COMPLAINT FOR JUDICIAL REVIEW,<br>VIOLATION OF DUE PROCESS,<br>DECLARATORY RELIEF AND<br>ATTORNEY'S FEES** |

COMES NOW CAPTAIN JOHN J. COTA, Plaintiff ("Captain Cota" or "Plaintiff") in the above-captioned action and complains against defendants UNITED STATES OF AMERICA, DEPARTMENT OF HOMELAND SECURITY, UNITED STATES COAST GUARD and the UNITED STATES COAST GUARD COMMANDANT as more fully set forth below:

### SUMMARY

This complaint arises from the final agency action decision dated February 13, 2012 by the United States Coast Guard Commandant, sustaining the decision of February 28, 2011

1

by the Coast Guard's National Maritime Center ("Coast Guard NMC") which denied Plaintiff's application for the return and renewal of his Coast Guard-issued license and merchant mariner's document, both of which were relinquished by Plaintiff to the Coast Guard on December 21, 2007 pursuant to a Voluntary Deposit Agreement and later not returned to Plaintiff upon demand even though Plaintiff had fully met the terms of that agreement, to wit: passing a physical examination and being declared fit for duty. This complaint seeks first, judicial review overturning the Coast Guard Commandant's final agency action under the Administrative Procedure Act. In separate and independent counts, this complaint also asks the Court to determine that the Coast Guard's internal administrative review which produced the final agency action is unconstitutional in that the process employed deprived Plaintiff of his due process rights.

## PARTIES

1.      Plaintiff Captain John J. Cota is a citizen of the United States, a resident of Petaluma, Sonoma County, California who, at all times material, was the holder of a United States Merchant Marine Officer's License Number 1100254, 8th Issue and dated January 6, 2005, issued in San Francisco, California, by the United States Coast Guard as a Master of Steam or Motor Vessels of not more than 1600 gross registered tons (domestic tonnage), 3000 gross tons (International Tonnage Convention ["ITC"]) upon Oceans; also, Third Mate of Steam or Motor Vessels of any gross tons upon Oceans; also Master of Towing Vessels Upon Oceans and Western Rivers; also First Class Pilot of any gross tons from Sea to San Francisco Bay, from Dumbarton Bridge, including Redwood City, Richmond Inner Harbor, Oakland inner-middle-outer harbor, and Alameda to San Pablo and Suisun Bay to Antioch Bridge, including Mare Island Straits and Hunters Point; and, Radar Observer (Unlimited). Captain Cota was also the holder of a Coast Guard-issued merchant mariner's document No. 073958 with endorsements for unlicensed ratings in the Deck Department, including Able Seaman, Wiper and Steward's Department (food handler). Coast Guard-issued licenses and merchant mariner's documents have since been consolidated into a single Merchant Mariner's Credential (MMC).

2

2.     The defendant Unites States Coast Guard ("Coast Guard") is an agency of the defendant sovereign the United States of America within the meaning of the Administrative Procedure Act, 5 U.S.C. § 702 *et. seq.* The United States Coast Guard Commandant is the Commanding Officer of the Coast Guard. At all relevant times hereto, the Coast Guard was and is part of the defendant Department of Homeland Security, an executive agency of the defendant sovereign United States of America. The Coast Guard resides within this district at various locations, including, but not limited to Commander, Coast Guard Sector San Francisco, Prevention Department, Building 14, Coast Guard Island, Alameda, CA 94501 which entered into the aforesaid Voluntary Deposit Agreement and took custody of Captain Cota's Coast Guard-issued license and merchant mariner's document on December 21, 2007, and Commander, U.S. Coast Guard, Sector San Francisco, 1 Yerba Buena Island, San Francisco, CA 94130, which refused to return Captain Cota's Coast Guard-issued license and merchant mariner's document before each expired, after which Captain Cota applied for renewal of his Coast Guard-issued license and merchant mariner's document (now referred to as a Merchant Mariner's Credential/MMC), which was denied with said denial being the subject of this complaint.

## JURISDICTION

3.     Plaintiff's claims arise under the Constitution and laws of the United States and this is an action seeking a declaration of rights and accordingly, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 2201.

4.     Plaintiff's action is also an appeal under 5 U.S.C. § 702 of a final agency action decision by the Commandant, United States Coast Guard, in the form of a letter dated February 13, 2012 which denied Captain Cota's appeal of the decision of the Coast Guard NMC denying Captain Cota's application for renewal of his MMC. A true and correct copy of that letter is attached hereto as Exhibit "1."

5.     This action also seeks an independent determination that the Coast Guard's refusal to return and renew Plaintiff's MMC constitutes violations of the due process provisions of the United States Constitution, Article 5.

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

6.     The Commandant's decision of February 13, 2012 states that it constitutes final agency action.

7.     Personal jurisdiction exists over Plaintiff and the Defendants by virtue of their presence within this district.

## VENUE

8.     Venue is proper in this district under 28 U.S.C. §1402(a) because Plaintiff resides within this district in Petaluma, CA.

## INTRADISTRICT ASSIGNMENT

9.     This lawsuit should be assigned to the San Francisco Division of this Court because a substantial part of the events or omissions giving rise to the lawsuit occurred in San Francisco and Oakland.

## PROCEEDINGS BELOW AND FACTUAL BACKGROUND

10.     Captain Cota first went to sea in 1966 as a messman. He entered California Maritime Academy in 1967, left to continue working at sea, returned in 1969 and graduated with a third mate's license in 1972. From 1974 to 1977, he sailed as a master on tugs worldwide. He returned to San Francisco in 1977 to begin working on his pilot trips in order to qualify as a San Francisco Bar Pilot.

11.     Captain Cota finished his pilot training in 1980 and, in February 1981, became a pilot licensed with the State of California by the Board of Pilot Commissioners for the Bays of San Francisco, San Pablo, and Suisun (the "State Board of Pilot Commissioners.") At that time, he began a long and distinguished career as a maritime pilot with the San Francisco Bar Pilots Association.

12.     As a First Class Pilot, any gross tons, Captain Cota was required to undergo a physical examination each year. Beginning in 2007, the Coast Guard required that each pilot, nationwide, file a copy of his/her annual physical examination report with his/her local Coast Guard Regional Examination Center (REC). The local Coast Guard REC which is under the command of U.S. Coast Guard Sector San Francisco ("San Francisco Coast Guard REC") is located at Oakland Federal Building, North Tower, 1301 Clay Street, Suite 180N,

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

Oakland, CA 94612-5200. Even though not required, Captain Cota voluntarily filed his 2006 physical exam report with the San Francisco Coast Guard REC at the same time (in April 2007) that he filed his 2007 report. Both of these physical examination reports, and Captain Cota's previous physical examination reports, were administered by one of four physicians approved by the California State Board of Pilot Commissioners, licensed by the State of California, and accepted by the Coast Guard as qualified to perform license renewal physicals. At the San Francisco Coast Guard REC, Captain Cota's 2006 and 2007 physical examination reports were reviewed by Chief Quartermaster Hogge, manager of the Pilotage Program, and then were placed in Captain Cota's Coast Guard licensing file. The Coast Guard did not notify Captain Cota of any questions or concerns regarding either of these annual physical examinations.

13. On November 7, 2007, an allision (a collision with a stationary object by a moving vessel) occurred in dense fog between the Hong Kong flag Container Ship COSCO BUSAN and the fenders around the base of the "D" tower of the San Francisco Oakland Bay Bridge. Plaintiff Captain Cota was then serving as the pilot aboard COSCO BUSAN. As a result of the allision, a part of the hull of the ship on the port side was ripped open and she spilled approximately 53,000 gallons of fuel oil into the Bay.

14. On November 30, 2007 the United States filed a civil lawsuit in federal court against Regal Stone Limited (owner of COSCO BUSAN), Fleet Management Ltd. (Operator of COSCO BUSAN) and Plaintiff seeking damages for resource injuries caused by the spill and for costs incurred cleaning up the spill. Plaintiff and the United States entered into a Consent Decree in the case of *United States of America v. M/V COSCO BUSAN, et. al.*, Case No. C 07-6045(SC) which contains the following provision:

¶38. ... nothing in this Consent Decree shall, of itself, prohibit or restrict John J. Cota from bringing an administrative proceeding against any governmental entity or agency, including the United States Coast Guard, for the sole and exclusive purpose of seeking non-monetary relief for the reinstatement,

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

renewal or issuance of any professional mariner's license, it being expressly understood and agreed that such an administrative proceeding, if any is filed, shall be limited solely, exclusively, and without exception to non-monetary relief, any potential claims of John J. Cota for monetary relief of any kind whatsoever as against the United States and other Plaintiffs having been resolved fully, completely, and finally, pursuant to this Consent Decree.

15.     On March 17, 2008, Plaintiff was sued by the United States in Action No. 08-0160, U. S. District Court for the Northern District of California, for misdemeanor violations of the Clean Water Act, 33 U.S.C. §§ 1319(c)(1)(a) and 1321(b)(3), and the Migratory Bird Protection Act, 16 U.S.C. §§ 703, 707(a) arising from the COSCO BUSAN allision.    This case was assigned to the Hon. District Judge Susan Illston.

16.     A subsequent superseding indictment added two felony counts under 18 U.S.C. § 1001 having to do with alleged lying when Plaintiff claims he forgot to list certain medications on his 2006 and 2007 annual physical exam forms.  These felony charges were later dropped as part of a plea bargain entered into on March 6, 2009, wherein Captain Cota agreed to plead guilty to the two criminal misdemeanor charges for oil pollution.   On July 17, 2009, he was sentenced by Judge Illston to ten (10) months in a Federal prison, which he served.  The Plea Agreement approved by the Court in her entry of Judgment stated "I further understand that I may seek the renewal of my Coast Guard licenses in January 2010 and to obtain the return of the license now on deposit with the Coast Guard pursuant to a voluntary deposit agreement entered into between the Coast Guard and me on December 21, 2007." The Plea Agreement then continues to state that on return and renewal of the license, Capt. Cota agrees not to use that part of the license allowing him to pilot vessels or to act as Master of vessels of not more than 1,600 gross tons during the one year period of supervised release but that no other license, including that as a Third Mate, is affected by the Plea Agreement, "unless otherwise prohibited by the Coast Guard."

17.     In the Plea Agreement, Captain Cota has admitted that he was at fault in

6

proximately causing the allision. However, in doing so, he did not assume sole fault for the allision. Other causes include (1) the ship's master's ineffective oversight of the vessel's progress; (2) the ship operator's failure to adequately train crewmembers and (3) while in communication with the Pilot by radio several minutes before the allision, the radar observer at Coast Guard San Francisco Vessel Traffic Service failed to follow his instructions to warn vessels of hazards to navigation and failed to communicate to the Pilot that the ship was off-course and heading directly for the Bridge's "D" Tower. The Plea Agreement between Captain Cota and the U.S. Government recognizes that, when the ship's Bosun radioed a warning in Chinese that he saw the bridge pier through the fog at about the same time as Captain Cota saw the bridge pier, Captain Cota gave multiple rudder commands that may have prevented far worse damages to the ship, the San Francisco Oakland Bay Bridge and a potentially worse oil spill.

18.     On December 6, 2007, the State Board of Pilot Commissioners for the Bays of San Francisco, San Pablo and Suisun Incident Review Committee filed an Accusation seeking suspension or revocation of Plaintiff's state pilotage license. Plaintiff filed a timely Notice of Defense.   The State Office of Administrative Hearings assigned an Administrative Law Judge. The federal criminal trial date was extended after the two felony charges were added, yet the State Administrative Law Judge assigned to preside over the Board of Pilot Commissioners hearing would not grant any further extensions.   Plaintiff was unable to defend his State license before his scheduled criminal trial as doing so would have necessitated Plaintiff's testifying on his own behalf at the State hearing, which he could not risk with the pending criminal trial. On June 30, 2008 Plaintiff gave notice of his retirement as a San Francisco State bar pilot.

19.     In December, 2007, the Coast Guard offered Plaintiff the choice of a Suspension & Revocation proceeding with a "Charge of Physical Incompetence" or, alternatively, entering into a Voluntary Deposit Agreement and depositing his credentials with the Coast Guard.   Plaintiff believed that the deposit was the best option in that, if he

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND
ATTORNEYS FEES

was found fit for duty by the examining doctor, the Coast Guard, upon verification of the results, would return his license.

20.     Plaintiff therefore chose the deposit agreement option and entered into a written agreement with Coast Guard whereby he would deposit his credentials with them until such time as he would submit to Coast Guard a physical examination report from a "third-party independent licensed physician" stating that he was "fully fit, in all respects, to perform my duties aboard ship."  On December 21, 2007, the Voluntary Deposit Agreement was signed by both parties and Captain Cota deposited his license and seaman's document with legal officers of the Coast Guard. See a true copy of the deposit agreement attached hereto marked Exhibit "2."

21.     When the National Transportation Safety Board (NTSB) conducted its public hearings in April 2008 Plaintiff declined to testify.  It was not a refusal to cooperate–he had already been questioned twice by the Coast Guard and once by NTSB without a grant of immunity.  Plaintiff's election to not testify before NTSB further was due to the aforesaid pending criminal action.

22.     On October 20, 2008, Dr. Allen F. Smoot, Plaintiff's family physician, examined Plaintiff and found him fully fit for duty and competent to continue sailing.  Dr. Smoot reviewed the Coast Guard's Navigation and Vessel Inspection Circular ("NVIC") No. 02-98 and its successor, NVIC No. 4-08 issued on September 15, 2008.  Dr. Smoot made his examination by applying the standards set forth in NVIC No. 4-08.  In accordance with his findings, Dr. Smoot prepared and signed the Merchant Mariner Physical Examination Report (Coast Guard Form CG-719K) on October 20, 2008.

23.     On February 3, 2009, the required Merchant Mariner Physical Examination Report (Coast Guard Form CG-719K) signed by Dr. Smoot was submitted to Coast Guard NMC for evaluation by its Medical Evaluation Branch.  This was sent to the Coast Guard NMC directly, and not to Coast Guard Sector San Francisco, since as of August 2008, the Coast Guard NMC assumed medical evaluation approvals and license-issuing decisions from REC San Francisco.  Along with Dr. Smoot's report, Plaintiff submitted a sleep study

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

performed by Dr. David Claman, Chairman, Director of the Sleep Clinic at the University of California, San Francisco, which included a study of the effects of Provigil on Plaintiff. Plaintiff also submitted a report from his ophthalmologist. A copy of Plaintiff's letter request of February 3, 2009 was also sent to Commander, Coast Guard Sector San Francisco, Prevention Department, the office which signed the Voluntary Deposit Agreement and took custody of Captain Cota's license and merchant mariner's document, thereby fully apprising and informing that office of Captain Cota's efforts seeking return of his deposited license and merchant mariner's document. Receipt of Plaintiff's letter request of February 3, 2009 seeking medical review and return of Plaintiff's license pursuant to the Voluntary Deposit Agreement was acknowledgment by T. Bassett, Chief, Mariner Evaluations Division, Coast Guard NMC, by email on February 11, 2009. Ms. Basset did not advise that the letter request for return of Captain Cota's deposited license and merchant mariner's should have been sent to Coast Guard Sector San Francisco, and wrote "Your letter will be hand delivered directly to the Medical Evaluation Branch [of Coast Guard NMC] for review. I will update you in approximately one week regarding the status of this review."

24.     Ms. Bassett provided no update as to the status, and did not respond to follow-up inquiries. Next, over six months later, the Coast Guard refused to return Captain Cota's license pursuant to the Voluntary Deposit Agreement because the Coast Guard ostensibly determined that Captain Cota had not satisfied the terms and conditions of the voluntary deposit. The Coast Guard notified Captain Cota of its refusal by a letter from Captain P.M. Gugg, Officer in Charge of Marine Inspection (Coast Guard OCMI), Sector San Francisco dated July 15, 2009, but this letter was not received by Plaintiff's counsel until August 26, 2009. In the letter, the Coast Guard OCMI noted that he was acting in the matter as the Coast Guard OCMI because Sector San Francisco had executed the Voluntary Deposit Agreement for the Coast Guard.

25.     The Coast Guard OCMI claims that Captain Cota did not comply with the terms of the Voluntary Deposit Agreement because Dr. Smoot was not a "third party,

9

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

independent physician" within the meaning of the Voluntary Deposit Agreement since he had been Captain Cota's primary care physician since 1973.

26.    The Coast Guard OCMI does not explain how the mere fact that Dr. Smoot had been Captain Cota's long time primary care physician presumptively prevented him from making a neutral and detached assessment of Captain Cota's fitness, and contradicts the fact that, nationwide, many thousands of mariners have physicals performed by their family physicians which have been accepted by the Coast Guard. The Coast Guard never contacted Dr. Smoot to assess whether he had any bias, let alone discuss, per the Voluntary Deposit Agreement, Captain Cota's condition and ability to perform duties. At all relevant times herein, Dr. Smoot has always been an independent, experienced, private general practitioner who has many patients in addition to Captain Cota. The Coast Guard's claim of bias by Dr. Smoot lacks any evidentiary support and demonstrates its own bias. The Coast Guard OCMI then set forth further grounds for finding Captain Cota medically unqualified for duty. The Coast Guard OCMI recommended that Captain Cota be examined by another independent physician.

27.    The Coast Guard OCMI letter did not state an appeal option, advising only that a new physical exam conducted by a "Third-Party, Independent Physician" could be submitted and, if done, that it should address all conditions listed in the letter.

28.    After receipt of the Coast Guard OCMI's letter, Captain Cota immediately located Dr. Baxter Bell, a physician who previously did not know Captain Cota. Dr. Bell examined Captain Cota and found him fit for duty. Dr. Bell filled out a CG Form 719K report of physical examination dated October 13, 2009, so stating.

29.    On January 6, 2010, Captain Cota's license and merchant mariner's document deposited with the Coast Guard expired due to the passage of time.   Under 46 C.F.R. § 10.277(f), Captain Cota had a one year's grace period to seek renewal of his MMC.

30.    Captain Cota submitted an application for renewal of his MMC on June 28, 2010, by letter to the Coast Guard NMC, with a copy sent to the Coast Guard San Francisco

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

REC. This letter also contested the claims of the Coast Guard OCMI contained in his letter of July 15, 2009 and addressed each medical concern raised by the Coast Guard OCMI.

31.     On July, 7, 2010, the Coast Guard NMC acknowledged receipt of Captain Cota's application for renewal and requested additional medical documentation on eight subjects, some of which duplicated issues raised by the Coast Guard OCMI.

32.     Captain Cota submitted all documentation responsive to the Coast Guard NMC's request on December 3, 2010.  At all relevant times, Captain Cota has cooperated with the Coast Guard NMC's requests for information for both the return and renewal of his MMC.  In the process, Captain Cota's medical expenses alone exceeded $20,000.00.

33.     In a letter dated January 24, 2011, the Coast Guard NMC informed Captain Cota that he was not medically qualified for renewal of his MMC because he had Obstructive Sleep Apnea and used the stimulant Provigil.  The Coast Guard NMC further stated that it "does not currently consider Obstructive Sleep Apnea requiring the use of the stimulant Provigil, acceptable for safety-sensitive positions."

34.     In its letter of January 24, 2011, the NMC stated that Captain Cota could request reconsideration of its decision or apply for a document of continuity (a document which, upon request, can be issued to an applicant for renewal who presently is unwilling or unable to meet requirements, which maintains the individual's eligibility for renewal by enabling the individual to obtain a properly endorsed and valid MMC at any time by satisfying requirements for renewal).  If reconsideration was sought, the NMC requested that Captain Cota work with his physicians to present "objective evidence that the risk to maritime and public safety has been mitigated."  The NMC also requested updated evaluations from Captain Cota's sleep specialist.  The NMC further suggested having Captain Cota's sleep specialist contact the NMC's Dr. L. G. Gillis, Chief of its Medical Evaluations Division and Federal Maritime Surgeon, with any questions about follow-up testing or guidelines. The Coast Guard NMC also requested that any request for reconsideration include updates on Captain Cota's recent right humerus fracture and his pharmacy-dispensing records from July 2010 to date.

11

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

35.    Captain Cota timely sought reconsideration of the Coast Guard NMC's decision declining renewal of his MMC on February 11, 2011.  In support of his request for reconsideration, Captain Cota submitted (1) a report and CV from his sleep specialist, Dr. David Claman; (2) a report from his orthopedic surgeon about his right humerus fracture, (3) a report from Captain Cota's family medicine physician; (4) a report from Dr. Valery Tarasenko, Advanced Pain Management Institute, and (5) Captain Cota's pharmacy records from July 8, 2010 to January 24, 2011. Captain Cota authorized the Coast Guard to speak to Drs. Claman and Barlas about Captain Cota's use of Provigil and his right humerus fracture, respectively.

36.    Dr. Claman, in his letter to Dr. Gillis dated February 8, 2011, noted that Captain Cota's treating physician began Provigil treatment in 2006, and that Captain Cota's combined use of CPAP treatment and Provigil are effective in treating his sleep disorder.  Dr. Claman also advised that Provigil is FDA-approved and approved for use in the U.S. Air Force, that Provigil does not diminish cognitive performance, and that it is not mind or mood altering.

37.    Dr. Claman further noted that his research indicated that the Coast Guard's position on Provigil may be based upon unpublished guidelines which do not reflect optimal FDA-approved medical therapy.  He requested a call from Dr. Gillis to discuss concerns and an opportunity to address/answer them in the event Dr. Gillis was not persuaded to reconsider her decision.

38.    Nobody from the Coast Guard NMC ever called Dr. Claman to discuss Captain Cota's OSA, his use of Provigil or the Coast Guard's concerns.

39.    On February 28, 2011, Captain A. S. Lloyd, then Commanding Officer of the Coast Guard NMC, denied Captain Cota's request for reconsideration of the Coast Guard NMC's decision denying return and renewal of his MMC.  The Coast Guard NMC acknowledged that Provigil is a "FDA approved indication" and that Provigil is used by the military in certain mission critical operational circumstances.  However, the Coast Guard opined that the severity of Captain Cota's obstructive sleep apnea ("OSA"), combined with

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

his use of a stimulant to "maintain adequate functioning," poses a risk to maritime and public safety. The Coast Guard NMC also opined that Captain Cota's right humeral fracture had not healed sufficiently and his use of narcotic pain killers would prevent him from performing the tasks outlined in Enclosure (2) of the NVIC 04-08, Physical Ability Guidelines. The Coast Guard NMC advised Captain Cota that he could request a formal appeal within 30 days or apply for a document of continuity. A copy of this letter is attached hereto as Exhibit "3."

40.     On March 11, 2011, Dr. Claman attempted calling Dr. Gillis, leaving a voicemail message requesting a return call. On March 14, 2011, Captain Cota wrote the Coast Guard NMC requesting clarification and documentation, such as publications or guidelines, supporting the Coast Guard's decision about OSA and the use of Provigil. The Coast Guard did not respond to either Dr. Claman's call or Captain Cota's request for clarification.

41.     Dr. Claman attempted to call Dr. Gillis again on March 23, 2011. Unable to get through to Dr. Gillis, Dr. Claman spoke to Mr. Brian Demaio of the NMC's Medical Section. Dr. Claman was informed by Mr. Demaio that Coast Guard policy is that sleep apnea licensees who function with a CPAP or BiPAP alone can be granted medical waivers, but not if they take Provigil or similar medication. As understood by Dr. Claman, Captain Cota could be deemed medically fit and eligible for a waiver were he to cease use of Provigil and then undergo successful testing. A second clarification request letter was sent to NMC on March 25, 2011 wherein Captain Cota offered to discontinue using Provigil and undergo future testing (a sleep study and maintenance of wakefulness test), and withdraw his application if testing indicates he could not function without Provigil if the Coast Guard would agree successful results would resolve concerns of unfitness. This clarification request asked for acknowledgement of receipt and that NMC extend the appeal period to 30 days from the date of NMC's answer to the clarification request. NMC acknowledged receipt of the request, but neither answered the request nor advised whether the appeal period would be extended. Therefore, to protect his rights, Captain Cota was forced to file an

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

1  administrative appeal.

2      42.     Captain Cota, on March 30, 2011, filed an administrative appeal pursuant to

3  46 C.F.R. § 1.03-20 with the Coast Guard NMC, demanding both the return and renewal of

4  his MMC.   The appeal was based upon the Coast Guard's actions in breaching the terms of

5  the Voluntary Deposit Agreement in not returning or renewing his license on receipt of not

6  one but three medical examination reports (one by Dr. Smoot and two by Dr. Bell) declaring

7  Captain Cota fit for duty.  The findings of fitness by these two doctors were also buttressed

8  by the 2006 and 2007 physical examination reports of the doctor who was appointed by the

9  State Board of Pilot Commissioners to perform the pilots' annual physicals.

10     43.     On April 29, 2011, the Coast Guard NMC sent a memorandum to the Coast

11 Guard's Commandant forwarding Captain Cota's March 30, 2011 appeal and noting that

12 Captain Cota's application for renewal of his MMC was denied because the severity of his

13 OSA required the use of the stimulant Provigil.  The Coast Guard NMC further noted that

14 Captain Cota did not meet Safety and Suitability requirements of 46 C.F.R. § 10.211(g) due

15 to his criminal conviction for violation of environmental laws.  Consequently, the Coast

16 Guard NMC imposed a one year assessment period (a time period during which an

17 application is deemed disapproved) from August 6, 2010 to August 6, 2011 pursuant to Title

18 46 C.F.R. Table 10.211(g).  The Coast Guard never informed Captain Cota about this one

19 year assessment period, even though 46 C.F.R. § 10.211(e) provides that when an application

20 is disapproved the applicant is to be notified in writing of that fact, the reason or reasons for

21 disapproval, and advised of the appeal procedures in 46 C.F.R. § 1.03.  Captain Cota was

22 unaware of the imposition of the one year assessment period until receipt of the aforesaid

23 April 29, 2011 Memorandum.  The Coast Guard NMC also conducted a Professional

24 Qualification Evaluation and determined that Captain Cota met all professional requirements

25 to renew his credentials except for (1) submitting proof of ongoing training and drills or

26 completion of a practical demonstration before a designated examiner to renew his Master of

27 Towing Oceans and Western Rivers license endorsement and (2) paying the required fee.  A

28 copy of this April 29, 2011 Memorandum is attached hereto as Exhibit "4."

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND
ATTORNEYS FEES

44.     After receipt and review of the NMC April 29, 2011 memorandum to the
Coast Guard Commandant explaining why Captain Cota's application for renewal was
denied, Captain Cota sent a letter to the Commandant's designated recipient for
correspondence, Ms. Pamela Moore, suggesting in lieu of the appeal that the Commandant
remand the appeal to NMC with instructions that Captain Cota be approved for the renewal
of his license after the completion of the assessment period if he meets Coast Guard NMC's
medical and professional qualifications as set forth in the memorandum. Captain Cota,
realizing it would take time to review the appeal and, if granted, more time to comply with
additional professional requirements, did not appeal the assessment period which was to end
on August 6, 2011. The letter to Ms. Moore, dated May 20, 2011, was never answered.

45.     A second letter to Ms. Moore, dated June 15, 2011, also was never answered.
Captain Cota, frustrated over NMC's non-response to his offers to resolve the medical
reasons stated by the Coast Guard as grounds for denial (by discontinuing use of Provigil and
withdrawing his application for renewal if unsuccessful in going off Provigil), on April 20,
2011 initiated an inquiry to his Congressional representative, The Honorable Lynn Woolsey,
the U.S. Representative for California's 6th Congressional district. Representative Woolsey
then contacted the Coast Guard and, on May 13, 2011, received a reply from the
Commandant of the Coast Guard which included the following:

> "In Mr. Cota's request to your office he asks the question, would the NMC consider
> him medically qualified if he submitted future evidence of healing of the humeral
> fracture, and evidence of discontinuing Provigil, or similar stimulants, and undergo
> another sleep study. In response to Mr. Cota's question, if his fracture heals, and he
> is able to perform the physical abilities outlined in NVIC 04-08, and he no longer
> requires the use of a narcotic, or opiate-like pain medications, and he is no longer
> taking Provigil, and he passes an MWT without sleep or naps, and without use of
> Provigil, then he would qualify for a MMC."

46.     This reply to Representative Woolsey's inquiry from the Commandant of the
Coast Guard (although the identity of the actual signatory is unknown since the signature is

15

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND
ATTORNEYS FEES

redacted) clearly stated Captain Cota "would qualify for a MMC." The Coast Guard's reply gave Captain Cota every hope of renewal of his MMC were he able to meet these clearly stated conditions which he had long before offered to meet.

47.     Defendant Coast Guard Commandant, through the Acting Director of the Prevention Policy Directorate (CG-54) ("PPD"), Captain Paul E. Thomas, responded to Captain Cota's appeal and, in a letter dated February 13, 2012, denied his appeal.   Although Captain Cota had but 30 days to file his appeal and then offered to meet Coast Guard requirements as set forth by the NMC, the Coast Guard took 10-½ months to answer with its denial.

48.     In its denial letter, the Coast Guard Acting Director, PPD, deemed the matter of the Coast Guard OCMI's refusal to return Captain Cota's license and merchant mariner's document which had been on deposit with the Coast Guard since December 21, 2007, was not properly before him and he would not address it. The Coast Guard Acting Director, PPD, noted that appeal of the Coast Guard OCMI's decision should have been made to the Coast Guard's Commander of the Eleventh Coast Guard District, which was not done. However, the Coast Guard Acting Director, PPD, failed to note that the Coast Guard OCMI, in his letter of July 15, 2009, did not apprise Captain Cota of any appeal rights or option, setting forth instead that Captain Cota, were he to opt to continue to pursue return of his license, only had one option - to obtain another physical exam and submit additional medical information. In contrast, the Coast Guard letter of February 28, 2011 advised Captain Cota of his right to request a formal appeal of Coast Guard NMC's denial of his request for renewal of his license. Additionally, as indicated above, Captain Cota did not receive the Coast Guard OCMI's letter dated July 15, 2009 until August 26, 2009.   Thus, the thirty (30) day appeal period had lapsed before Captain Cota received the Coast Guard OCMI's letter, thereby depriving Captain Cota of opportunity to file an appeal. See 46 C.F.R. § 1.03-15.

49.     The Coast Guard Acting Director, PPD, claimed that the only issue properly before him on Captain Cota's appeal was whether the Coast Guard NMC acted appropriately in denying Captain Cota's application for renewal.   The Coast Guard Acting Director, PPD,

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

noted that the NMC denied Captain Cota's renewal for three reasons:

(1) Captain Cota was medically disqualified because of (a) the severity of his OSA, (b) his alleged dependency on Provigil and (c) his unhealed humeral fracture;

(2) Captain Cota failed to meet the professional qualification requirements for renewal because he did not participate in ongoing training and drills; and,

(3) the NMC imposed an assessment period to expire on August 6, 2011 due to Captain Cota's conviction of environmental crimes under 46 C.F.R. § 10.211(g). The Coast Guard Acting Director, PPD, stated that he would not address this issue due to expiration of the assessment period.

50.     In addressing the first issue, the Coast Guard Acting Director, PPD, noted that an independent review of Captain Cota's medical fitness was performed by a reviewing physician at Coast Guard Headquarters (Dr. Adrienne Buggs).  Based upon information provided by Captain Cota and his physicians, this reviewing physician noted that Captain Cota's fractured humerus had healed and that his OSA was adequately treated with continuous positive airway pressure (CPAP) and Provigil, a change in Coast Guard's position.

51.     Notwithstanding the recommendation of the Coast Guard's reviewing physician that Captain Cota be granted a medical waiver, the Coast Guard Acting Director, PPD, noted that a medical waiver would not be granted based upon the outcome of the other issues.

52.     As for the second issue, the professional renewal requirements cited by NMC as not satisfied by Captain Cota only apply to Captain Cota's endorsement on his license as a Master of Towing Vessels, not to his other officer endorsements (Master, 1,600 gross tons, Third Mate Unlimited, and First Class Pilot.)   See 46 C.F.R. § 10.227(d)(8)(vi).  As noted above, the Coast Guard NMC determined that he had otherwise met all professional requirements to renew his credentials.  In communications with personnel at the Coast Guard's Mariner Credentialing Program Policy Division of Coast Guard Headquarters, Captain Cota indicated his awareness of the need to satisfy additional professional

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

qualification requirements but requested that the Coast Guard resolve the medical issues before he incurred further expense in complying with those requirements. The Coast Guard Mariner Credentialing Program Policy Division Attorney Advisor, David M. Van Nevel, on October 19, 2011, agreed that, assuming the granting of a medical waiver, it would be reasonable to hold Captain Cota's renewal application file open for 90 days to enable Captain Cota to then take the necessary classes to satisfy his professional qualification requirements.

53.     The Coast Guard Acting Director, PPD, stated "While I agree with the NMC's determination regarding Captain Cota's master of towing vessels, I disagree with the implication that Captain Cota meets the professional qualifications for his other officer endorsements (namely, Master, 1600 gross tons, Third Mate Unlimited, and First Class Pilot.) Contrary to the Coast Guard Acting Director, PPD's statement, the Coast Guard NMC determined, not implied, that Captain Cota met the professional requirements for his other officer endorsements.   The Coast Guard Acting Director, PPD, specifically cites 46 U.S.C. § 7101(e), as well as Captain Cota's role in the allision of the COSCO BUSAN and his role in the temporary grounding of the M/V PIONEER, to assert that Captain Cota does not meet the professional qualifications of his other officer endorsements.

54.     However, the statute cited by the Coast Guard Acting Director, PPD, namely 46 U.S.C. § 7101(e), only applies to Captain Cota's First Class Pilot endorsement, which Captain Cota was required to possess to serve as pilot aboard both the COSCO BUSAN and the PIONEER under his State pilot's license. Section 7101(e) of Title 46 does not apply to Captain Cota's other officer endorsements – Master, 1600 gross tons, Third Mate Unlimited, and Master of Towing Vessels. The Coast Guard Acting Director, PPD's actions exceed the scope of the Section 7101(e) of Title 46, the Coast Guard NMC's decision and Captain Cota's appeal and thereby violate his due process rights.

55.     The Coast Guard Acting Director, PPD, makes further statements that Captain Cota is not a safe and suitable person as defined by 46 C.F.R. § 10.107 because of his criminal conviction in the COSCO BUSAN allision, his failure to disclose information as to his 2006 and 2007 medical exam forms, and his omitting on his Application for Renewal the

18

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND
ATTORNEYS FEES

issuance of an undated warning letter regarding the February 20, 2006 grounding of the freighter PIONEER. The Coast Guard Acting Director, PPD, cites the aforesaid as grounds for denying renewal of Captain Cota's MMC.

56. The Coast Guard NMC, in its memorandum of April 29, 2011, transmitting Captain Cota's appeal, never made reference to Captain Cota's 2006 or 2007 medical exam forms or the grounding of the PIONEER. The NMC, in its safety and suitability determination, imposed a one-year assessment period which was not appealed. Therefore, the Coast Guard Acting Director, PPD's actions exceed the scope the NMC's decision and Captain Cota's appeal.

57. The Coast Guard Acting Director, PPD's consideration of uncharged misconduct regarding omissions in Captain Cota's 2006 and 2007 physical exam forms and the PIONEER grounding violates Captain Cota's due process rights. Captain Cota's omissions in his 2006 and 2007 physical exam forms and his omission of the PIONEER Letter of Warning on his Application for Renewal were purely inadvertent. The PIONEER incident would have been easy to forget, inasmuch as the grounding was for only 15 minutes, the vessel was undamaged and Captain Cota easily freed her using her own power. Further, Coast Guard did not take any immediate action regarding the PIONEER grounding; instead, it issued a letter of warning, which is undated, ten (10) months after the grounding. Note that the omissions in Captain Cota's 2006 and 2007 physical forms were the subject of a subsequent superseding indictment against him adding two felony counts under 18 U.S.C. § 1001 which were dropped, and that the Coast Guard did not prefer a Suspension & Revocation Misconduct charge alleging submission of fraudulent information.

58. The following excerpts are taken from the Coast Guard Marine Safety Manual, Volume III, Marine Industry Personnel:

> Licensed mariners holding second and later issuance licenses (note Captain Cota's license on deposit with the Coast Guard was his eighth issue) have acquired "property interest" in the license. This "property interest" is protected by the due process requirements of the Fifth and Fourteenth

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

Amendments of the Constitution. . . .  A license, COR (Certificate of

Registry), or MMD (Merchant Mariner's Document) renewed by way of a

fraudulent application may not be declared "null and void".  Instead, the

mariner must be provided with an administrative hearing conducted under 46

CFR Part 5 where the credential may be revoked for misconduct.

By email of April 20, 2011, the Coast Guard Suspension & Revocation National Center of

Expertise (S&R NCOE), through CDR Scott Budka, Commanding Officer, notified the Coast

Guard NMC that S&R NCOE had contacted the Coast Guard OCMI Sector San Francisco

and there were no pending Suspension & Revocation charges against Captain Cota.

Plaintiff's license was the eighth issue.  The Coast Guard Acting Director, PPD's

presumption of fraudulent concealment by Captain Cota demonstrates the Coast Guard's

disregard of both its own policy set forth in the aforementioned Marine Safety Manual

extract and Captain Cota's property interest.  It also demonstrates the Coast Guard Acting

Director, PPD's bias in denying Captain Cota's appeal for renewal of his MMC.

59.     On April 14, 2011, while Captain Cota's appeal was pending, he applied for a

document of continuity with the Coast Guard to protect his rights in the event that his appeal

was denied.  On May 5, 2011, the Coast Guard issued a Merchant Mariner Document of

Continuity to Captain Cota.

60.     Per 46 CFR § 10.227(e), "A holder of a document of continuity may obtain a

properly endorsed, valid MMC at any time by satisfying the requirements for renewal as

provided in paragraph (d) (of 46 CFR § 10.227)."  Captain Cota, all along, has been willing

to and is able to meet these requirements.  Through considerable effort and expense as set

forth above, Captain Cota has demonstrated his medical fitness to the Coast Guard.  In

response, the Coast Guard Acting Director, PPD created new grounds for denial which went

far beyond the initial denial reasons set forth by the Coast Guard NMC.

61.     The Coast Guard Acting Director, PPD's subsequent  denial grounds were

not, nine months before, explained to Congresswoman Woolsey in response to her inquiries.

It appears that the Coast Guard never believed that Captain Cota would satisfy its medical

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND
ATTORNEYS FEES

requirements and, once he did, the Coast Guard hastily, and rather inartfully, as demonstrated by incorrect citation of statutory authority, came up with other reasons to deny renewal of his MMC.

62.    The apparent Coast Guard strategy schemed before December 21, 2007 was to secure custody of Captain Cota's license and merchant mariner's document through a sham Voluntary Deposit Agreement, not return his license and merchant mariner's document and deny his application for renewal.  Captain Cota would seek monetary damages were it not for ¶ 38 of the Consent Decree, which no doubt was structured by government attorneys who recognized the government's bad faith in its dealings with Captain Cota.

## FIRST CLAIM FOR RELIEF

### (Judicial Review Under 5 U.S.C. § 704)

63.    Plaintiff re-alleges as though fully set forth the allegations of Paragraphs 1 through 62 as though fully set forth herein.

64.    Plaintiff, as a licensed merchant marine officer, has a property right in his license that is protected by the due process requirements of the Fifth and Fourteenth Amendments of the United States Constitution.

65.    The Commandant's letter dated February 13, 2012 was final agency action within the meaning of 5 U.S.C. § 704.

66.    The Commandant's final agency action is subject to judicial review for the following reasons:

(a)    It is arbitrary, capricious and an abuse of discretion, and otherwise not in accordance with law;

(b)    It is contrary to Constitutional right, power, privilege or immunity;

(c)    It exceeds statutory jurisdiction, authority, or limitations, or is short of statutory right;

(d)    It is without observance of procedure required by law;

(e)    It is unsupported by substantial evidence;

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

(f)     It was unwarranted by the facts to the extent that the facts are subject to a trial de novo by this Honorable Court.

## SECOND CLAIM FOR RELIEF

(Violation of Due Process under the United States Constitution Amendment V)

67.     Plaintiff re-alleges as though fully set forth the allegations of Paragraphs 1 through 66 as though fully set forth herein.

68.     Defendant United States Coast Guard, through its Commandant, OCMI and NMC, violated plaintiff's due process rights arising under Fifth and Fourteenth Amendments of the United States Constitution as follows:

a.     By employing a process that is arbitrary, capricious, and an abuse of discretion;

b.     by ignoring or failing to observe procedures recognized or required by law;

c.     by issuing or rendering decisions unsupported by substantial evidence, or following guidelines and procedures specifically prohibited by statutes of the United States and the law arising under them;

d.     by issuing decisions unwarranted by the facts;

e.     and by the Commandant's issuing a decision constituting final agency action denying plaintiff's application for renewal that exceeds the scope of the NMC's determination without giving plaintiff prior notice and an opportunity to respond.

## THIRD CLAIM FOR RELIEF

(Declaratory Relief Pursuant to 28 U.S.C. § 2201)

69.     Plaintiff re-alleges as though fully set forth the allegations of Paragraphs 1 through 68 as though fully set forth herein.

70.     This Complaint raises an actual controversy within the meaning of 28 U.S.C. § 2201 and this Honorable Court is therefore empowered to declare the rights of the parties.

///

///

///

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

## FOURTH CLAIM FOR RELIEF

(Attorney's Fees Pursuant to 28 U.S.C. § 2412(d)(l))

71.     Plaintiff re-alleges as though fully set forth the allegations of Paragraphs 1 through 70 as though fully set forth herein.

72.     For all the reasons set forth above, the position of the defendants United States of America and United States Coast Guard, in which they denied renewal of Plaintiff's MMC, was not substantially justified.  Moreover, special circumstances do not exist that make an award of attorney's fees in this case unjust.  Plaintiff accordingly seeks the recovery of his attorneys fees, costs and expenses in this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1).

**WHEREFORE** the Plaintiff, Captain John J. Cota prays that this Honorable Court:

1.     REVERSE or VACATE the Decision of the United States Coast Guard Commandant dated February 13, 2012  and order the defendants Commandant and the United States Coast Guard to renew the Merchant Marine Credential of Captain John J. Cota to permit him to continue sailing under his United States Coast Guard-issued Master's license with all his  endorsements;

2.     DECLARE that the Commandant's and the United States Coast Guard's final agency action dated February 13, 2012 employed a process that is arbitrary, capricious and an abuse of discretion; because they ignored or failed to follow procedures recognized by law; because they rendered a decision unsupported by substantial evidence; and because they violated laws of the United States, as well as other internal shortcomings and flaws in the administrative handling of the application for return and renewal of Plaintiff's MMC which are all violations of Captain Cota's constitutionally-guaranteed right of due process arising under the Fifth and Fourteenth Amendments of the United States Constitution and are all therefore NULL, VOID and UNENFORCEABLE;

3.     Conduct a full judicial review, including a trial de novo, of Capt. Cota's request for the return and renewal of his MMC to permit him to continue sailing under his Coast Guard License;

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

4.      ORDER all or any such other relief or different relief, as may be just and proper under these circumstances.

## JURY DEMAND

The plaintiff respectfully demands a trial by jury on all claims so triable.

Dated: February 8, 2013                    SINUNU BRUNI LLP

By: _____

By: _____
JOHN F. MEADOWS
LEOPOLDO J. CHANCO
Attorneys for Plaintiff
CAPTAIN JOHN J. COTA

COMPLAINT FOR JUDICIAL REVIEW, VIOLATION OF DUE PROCESS, DECLARATORY RELIEF AND ATTORNEYS FEES

# EXHIBIT 1.

**EXHIBIT 1.**

**U.S. Department of
Homeland Security**

**United States
Coast Guard**


Commandant
United States Coast Guard

2100 2nd Street, S.W. Stop 7581
Washington, DC 20593-7581
Staff Symbol: CG-5434
Phone: (202) 372-2357
FAX: (202) 372-1918

16721/1622289
Appeal 2011-028

John F. Meadows, Esq.
Sinunu Bruni, LLP
333 Pine Street, Suite 400
San Francisco, CA 94104

FEB 13 2012

Dear Mr. Meadows:

This is in response to your letter of March 30, 2011, on behalf of Captain John J. Cota in which
you appealed the decision by Commander, Sector San Francisco to withhold Captain Cota's
Merchant Mariner Credential (MMC) that was voluntarily deposited with the Coast Guard in
accordance with Title 46, Code of Federal Regulations (CFR) section 5.201, and the decision by
Commanding Officer, National Maritime Center's (NMC) to deny Captain Cota's request to
renew his MMC.  Captain Cota's appeal was received at Coast Guard Headquarters in
Washington, D. C. on May 2, 2011.  You submitted amplifying information on several
occasions between May 20, 2011 and November 1, 2011.  Based on a review of Captain Cota's
record and the material submitted, his appeal is denied.

The Commanding Officer, Sector San Francisco notified you via letter on July 15, 2009 that he
would not return Captain Cota's MMC pursuant to the voluntary deposit agreement since, in his
view, Captain Cota had not met the terms of the agreement.  Sector San Francisco noted in that
letter that he was acting as the Officer in Charge of Marine Inspection (OCMI).  Appeals of the
OCMI are subject to the appeal provisions of 46 CFR 1.03-20.  The appeal of this decision
should therefore have been filed with the Commander of the Eleventh Coast Guard District.
This matter is not properly before me and will not be addressed in this letter.  In any event,
Captain Cota's expired credential was returned to him in August 2011.

The only issue properly before me on appeal is whether the NMC acted appropriately in denying
Captain Cota's application for renewal.  Captain Cota applied for renewal of his officer
endorsements of master of towing vessels upon oceans and western rivers, third mate of oceans
steam or motor vessels of any gross tons, first class pilot and radar observer.  He also applied for
renewal of his rating endorsements as able seaman, wiper, and steward's department (food
handler).  For the reasons outlined below, I find that Captain Cota is not eligible for renewal.

The NMC denied Captain Cota's renewal for three reasons:

    a.  NMC determined that Captain Cota did not meet the medical standards under 46 CFR
        10.215 due to: 1) the severity of his obstructive sleep apnea (OSA); 2) his dependency
        on the use of a stimulant to maintain adequate functioning; and 3) the unhealed humeral
        fracture that kept Captain Cota from meeting the Physical Ability Guidelines;

FEB 13 2012
16721/1622289

b. NMC determined that Captain Cota did not meet the professional qualification requirements for renewal in that Captain Cota had not provided evidence that he had participated in ongoing training and drills; and

c. NMC imposed an assessment period to expire on August 6, 2011 due to conviction of environmental crimes under 46 CFR 10.211(g). As the assessment period has expired, I will not address it further.

<u>Captain Cota's Medical Condition:</u>

Based on a review of Captain Cota's medical record, including consultations with his treating physicians, I have determined that a medical waiver could be granted in accordance with 46, CFR 10.215(g). In connection with this appeal, an independent review of Captain Cota's medical fitness was performed by a physician at Coast Guard Headquarters. The reviewing physician requested further information, which you provided, in order to ensure a full and fair evaluation of Captain Cota's medical conditions. The reviewing physician noted that the fractured humerus has healed and that the only remaining medical condition to address is Captain Cota's OSA and his use of Provigil. Based on her review of the record and the additional information provided by Captain Cota's physicians, she recommended that Captain Cota be granted a waiver. I concur with her recommendation and agree that Captain Cota is eligible for a waiver for OSA adequately treated with continuous positive airway pressure (CPAP) and Provigil. However, because of the outcome of the other issues in his appeal, a medical waiver will not be granted..

<u>Captain Cota's Professional Qualifications:</u>

The NMC denied Captain Cota's renewal of the endorsement as master of towing vessels because he had not provided evidence of ongoing training and drills in accordance with 46 CFR 10.227(d)(8)(vi). As you noted, Captain Cota is aware of those professional renewal requirements and did not dispute them. Understandably, he was concerned about incurring unnecessary expenses in light of questions regarding his medical fitness. While I agree with the NMC's determination regarding Captain Cota's master of towing vessels, I disagree with the implication that Captain Cota meets the professional qualifications for his other officer endorsements. Specifically, 46 USC 7101(e) states that an applicant may only be issued a credential if he has the "requisite general knowledge and skill to hold the license" and "demonstrates proficiency in the use of electronic aids to navigation." Captain Cota's role in the allision of the M/V COSCO BUSAN with the San Francisco Bay Bridge and his role in the grounding of the M/V PIONEER in 2006 demonstrate he does not have the judgment, general knowledge, skill, and proficiency necessary to hold a merchant mariner credential.

<u>Captain Cota's Safety and Suitability:</u>

Because of Captain Cota's criminal conviction and his record of failing to reveal critical information to the Coast Guard, I have determined that he is not a safe and suitable person as defined in 46 CFR 10.107. I conclude that he is unsuitable for service in the merchant marine. Congress specifically authorized the consideration of criminal convictions during the renewal process. 46 USC 7109.

FEB 13 2012

16721/1622289

The investigation into the M/V COSCO BUSAN allision revealed that Captain Cota had not been fully honest in filling out various medical forms submitted to the Coast Guard. In Captain Cota's plea papers filed in 2009, he admits that his 2006 physical exam form failed to disclose some of the medications he was prescribed including Provigil, Lorazepam, Vicodin, Tylenol 4, Darvon 65, Zoloft and Ambien. He also admitted in court filings that his 2007 physical exam form filed pursuant to 46 CFR 11.709 failed to disclose to the Coast Guard three medications (Vicodin, Zoloft and Tylenol 4) he was taking. On his 2007 form, he reported taking various other drugs "occasionally", but he admits that he "refilled many of these prescriptions regularly."

On his April 2010 application for renewal, Captain Cota failed to reveal the fact that he was issued a letter of warning in 2006. In section III of CG-719B (Rev 03/04), Captain Cota responded "No" to the sixth question which is, "Have you ever been given a Coast Guard Letter of Warning or been assessed a civil penalty for violation of maritime or environmental regulations?" This was, in fact, false as Captain Cota was issued a letter of warning by Sector San Francisco in December, 2006 for the grounding of the M/V PIONEER. He was cited for operating a vessel in a negligent manner.

<u>Decision</u>

I am denying Captain Cota's appeal because he has demonstrated that he lacks the professional judgment and skill necessary to hold the credentials sought and because I have determined that Captain Cota is not a safe and suitable person. His criminal conviction involving the failure to safely operate a vessel and his repeated pattern of failing to candidly and accurately complete applications which he then submitted to the Coast Guard demonstrate he cannot be entrusted with the duties and responsibilities for which he applied. I find that renewing Captain Cota's credential presents a threat to the safety of life or property, is detrimental to good discipline, and is not in the best interest of the United States.

This constitutes final agency action on the issues raised in this appeal.

Please contact Mr. Luke Harden of my staff at (202) 372-1206 or Luke.B.Harden@uscg.mil if you have any questions.

Sincerely,

PAUL F. THOMAS
Captain, U.S. Coast Guard
Acting Director, Prevention Policy

Copy: Commanding Officer, National Maritime Center

3

# EXHIBIT 2.

**EXHIBIT 2.**

07/29/2008  10:47    4154215558                    JEDEIKIN                              PAGE  02/03

Page 1 of 2

| UNITED STATES OF AMERICA<br>U.S. DEPARTMENT OF HOMELAND SECURITY<br>UNITED STATES COAST GUARD | |
|---|---|
| ADDRESS OF COAST GUARD UNIT:<br><br>**COMMANDER**<br>**COAST GUARD SECTOR SAN FRANCISCO**<br>**PREVENTION DEPARTMENT**<br>**BUILDING 14, COAST GUARD ISLAND**<br>**ALAMEDA, CA  94501**<br><br>INVESTIGATING OFFICER: LT KRIS SZCZECHOWICZ, USCG<br>TELEPHONE: (510) 437-3148 | NAME AND ADDRESS OF MARINER:<br><br>**CAPTAIN JOHN J. COTA**<br>**C/O JOHN MEADOWS, ESQ.**<br>**JEDEIKEN, MEADOWS AND SCHNEIDER**<br>**333 PINE STREET, 5TH FLOOR**<br>**SAN FRANCISCO, CA  94104**<br><br>TELEPHONE: (415) 477-8826 |
| **Voluntary Deposit Agreement** | COAST GUARD ENFORCEMENT ACTIVITY NUMBER:<br>3113517 |

I, JOHN J. COTA, have been informed by LIEUTENANT KRIS SZCZECHOWICZ, a Coast Guard Investigating Officer, that, based on a review of my current physical in accordance with 46 Code of Federal Regulations 10.709, on December 21, 2007, I am presently considered to be physically incompetent to serve as a licensed pilot aboard United States and foreign flag merchant vessels.

In order to avoid being issued a complaint for incompetence under the provisions of 46 United States Code Section 7703, I am voluntarily depositing my U.S. Coast Guard issued Merchant Mariner's License number 1100254 with the U.S. Coast Guard on this date. I understand that while this agreement is in effect the Coast Guard will not issue a complaint for incompetence against me.

I understand that this voluntary deposit agreement will remain in effect until I present a report from a third-party, independent licensed physician which states that I am fully fit, in all respects, to perform my duties aboard ship. I agree to allow the Coast Guard to provide this physician with my medical history and information concerning my duties aboard ship. I agree to allow this physician to provide the Coast Guard with medical information concerning my ability to perform my duties aboard ship. I understand that the Coast Guard will promptly return my Credential(s) to me after confirming the physician's report unless the report is withdrawn or amended by the physician.

ORIGINAL – Respondent
COPY – Sector Prevention Office
COPY – National Maritime Center

07/29/2008  10:47    4154215558              JEDEIKIN                              PAGE  03/03

Page 2 of 2

| Voluntary Deposit Agreement | COAST GUARD ENFORCEMENT ACTIVITY NUMBER: 3113517 |
|---|---|

I agree that during the period the Coast Guard holds my Credential(s), I will not accept employment on any merchant vessel of the United States or foreign flagged vessel. I further agree that I will not make application to the Coast Guard for the renewal, issue or reissue of any Merchant Mariner's Document, License or Certificate of Registry, without stating on such application that this agreement is in effect.

I enter into this agreement freely and voluntarily and I fully understand its meaning and effect.


_____
Signature of Respondent

**********************************************************************************************

U.S. Coast Guard Merchant Mariner's License Number 1100254 received in accordance with the above deposit this 21st day of December, 2007, by U.S. Coast Guard Sector San Francisco.


Signed _____      _____
        Investigating Officer for the United States Coast Guard          Type or print name



ORIGINAL – Respondent
COPY – Sector Prevention Office
COPY – National Maritime Center

# EXHIBIT 3.

**EXHIBIT 3.**

**U.S. Department of
Homeland Security**

**United States
Coast Guard**

Commanding Officer
United States Coast Guard
National Maritime Center

100 Forbes Drive
Martinsburg, WV 25404
Staff Symbol: NMC6
Phone: (888) 427-5662
FAX: (304) 433-3407

16721/1622289
FEB 2 8 2011

John J. Cota
335 Bassett Street
Petaluma, CA 94952

Dear Mr. Cota::

Thank you for your letter requesting reconsideration of the National Maritime Center's (NMC)
denial of your Merchant Mariner Credential renewal application dated July 02, 2010.

Careful consideration and review of all available medical information reveals that you suffer
from multiple medical problems, including non-insulin requiring diabetes mellitus,
hypothyroidism, hyperlipidemia, gastro-esophageal reflux disease, migraine headaches,
glaucoma, renal calculi, depression, obstructive sleep apnea (OSA), diabetic foot neuropathy,
and a right humeral fracture.  Your application for your Merchant Mariner Credential was denied
in January 2011 due to the severity of your OSA, which required the use of the stimulant,
Provigil.  Additional information was also needed about your humeral fracture.  Your package
requesting reconsideration of this decision includes a letter from Mr. Meadows dated February
11, 2011, a letter from Dr. Clamans dated February 8, 2011, a letter from Dr. Barlas dated
February 3, 2011, a letter from Dr. Schweig dated February 3, 2011, a letter from Dr. Tarasenko
dated February 7, 2011, and your pharmacy records.

Dr. Clamans confirms in his letter your continued use of CPAP and Provigil to treat your OSA.
He reaffirms the results of the previously performed Maintenance of Wakefulness Test (MWT)
showing no sleep on any naps after using CPAP and Provigil.  We acknowledge his observations
that your use of Provigil is an FDA-approved indication and that this stimulant is used by the
military in certain mission-critical operational circumstances.  The basis for your denial,
however, is not that you use Provigil.  It is that your OSA is so severe that it cannot be controlled
by CPAP alone and requires you to use a stimulant to maintain adequate functioning.  This
reliance on daily medication to maintain adequate alertness is concerning and as such, your
condition poses a risk to maritime and public safety.  Other transportation agencies also
subscribe to this rationale, including the Federal Aviation Administration.  While we appreciate
the points made by Dr. Clamans and respect his position, you have not presented any new
objective evidence that the risk from your OSA has been mitigated.

Your right humeral shaft fracture recently required open reduction internal fixation with iliac
crest bone grafting on January 25, 2011 due to delayed union.  It appears from the letters from
Dr. Tarasenko and Dr. Schweig that they are no longer prescribing you narcotics and that Dr.
Barlas is the only physician prescribing narcotics for your post-operative pain.  Dr. Barlas

Mar 03 11 07:32p      John Cota                          70▪▪62-6411                    p.3

16721/1622289

indicates in his note that he anticipates it will take three to four months for you to achieve full functioning of your arm. Your presumed inability to perform the tasks outlined in Enclosure (2) of the NVIC 04-08, Physical Ability Guidelines, and your current need for narcotic medication post-operatively indicate that your fracture is not sufficiently healed at this time to meet our requirements even for entry level positions.

In summary, your reconsideration package includes information attesting to your continued limited functioning and need for post-operative Hydrocodone due to your humeral fracture, and reiterates the need to use Provigil in treating your OSA. The severity of your OSA, which requires the chronic use of stimulants for adequate functioning, still poses a risk to maritime and public safety.. As such, our initial decision to deny your application is upheld. You are not medically qualified for renewal of your Merchant Mariner Credential.

There are two options for you to consider. First, in accordance with 46 CFR 1.03-40, you may request a formal appeal. Your formal appeal should address any possible errors, provide new facts or information and/or provide extenuating circumstances in order to mitigate the decision. The formal appeal must be made in writing and postmarked no later than 30 days after the date of this letter. Please send the formal appeal to the address listed above. This office will then forward your appeal and your complete NMC file to Director of Prevention Policy (CG54) at Coast Guard Headquarters for consideration of your appeal.

While a formal appeal is pending, the original decision or action and reconsideration decisions remain in effect, unless otherwise stayed. Failure to submit a formal appeal in accordance with the aforementioned procedures and time limits will result in the original decision or action becoming final agency action.

It is recommended that you retain copies of all material you send with any request for appeal. Please attach a copy of this letter to any documentation you provide us in response to this notification.

Your second option is to apply for a Document of Continuity. To apply for a Document of Continuity, you need to submit a separate application via a Regional Examination Center and return your credential with the application as per 46CFR 10.227(e). There is a one-year grace period to renew once the MMC expires. If more time is needed, you also have the option to place your credential in a continuity status. For more information on a Document of Continuity go to the NMC website at: http://www.uscg.mil/nmc/continuity.asp.

Sincerely,

A. S. Lloyd
Captain, U.S. Coast Guard

Copy: USCG, S&R NCOE

2

TITLE 46--SHIPPING

CHAPTER I--COAST GUARD, DEPARTMENT OF TRANSPORTATION

PART 1--ORGANIZATION, GENERAL COURSE AND METHODS GOVERNING MARINE
SAFETY FUNCTIONS--Table of Contents

Subpart 1.03--Rights of Appeal

Sec. 1.03-10  Definition of terms used in this subpart.

   (a) The term recognized classification society means the American
Bureau of Shipping or other classification society recognized by the
Commandant.
   (b) The term new vessel means:
   (1) For vessels which require a Certificate of Inspection, a new
vessel is a vessel which has not received an initial Certificate of
Inspection.
   (2) For vessels which do not require a Certificate of Inspection, a
new vessel is a vessel which has not received a Load Line assignment.
   (c) The term existing vessel means a vessel which is not a new
vessel.

Sec. 1.03-15  General.

   (a) Any person directly affected by a decision or action taken
under
this chapter or under chapter III of this title, by or on behalf of the
Coast Guard, except for matters covered by subpart J of part 5 of this
chapter dealing with suspension-and-revocation hearings, shall follow
the procedures contained in this section when requesting that the
decision or action be reviewed, set aside, or revised.
   (b) When requesting that a decision or action be reconsidered or
reviewed, as may be required by this subpart, such request must be made
within 30 days after the decision is rendered or the action is taken.
   (c) When making a formal appeal of a decision or action, as
permitted by this subpart, such appeal must be submitted in writing and
received by the authority to whom the appeal is required to be made
within 30 days after the decision or action being appealed, or within
30
days after the last administrative action required by this subpart.
Upon
written request and for good cause, the 30 day time limit may be
extended by the authority to whom the appeal is required to be made.
   (d) A formal appeal must contain a description of the decision or
action being appealed and the appellant's reason(s) why the decision or
action should be set aside or revised.
   (e) When considering an appeal, the Commandant or a District
Commander may stay the effect of a decision or action being appealed
pending determination of the appeal.
   (f) While a request for reconsideration or review or a formal
appeal
is pending, the original decision or action remains in effect, unless
otherwise stayed under paragraph (e) of this section.
   (g) The Commandant may delegate authority to act on administrative
appeals under this subpart to the Assistant Commandant for Marine
Safety

and Environmental Protection, and appropriate office chiefs within
Marine Safety and Environmental Protection.

(h) Formal appeals made to the Commandant shall be addressed to:

(1) Commandant (G-MOC) for appeals involving vessel inspection
issues, load line issues, and vessel manning issues;

(2) Commandant (G-MS) for appeals involving vessel plan review or
tonnage measurement issues;

(3) Commanding Officer, National Maritime Center, for appeals
involving vessel documentation issues, marine personnel issues,
including medical waivers, and suspension or withdrawal of course
approvals; or

(4) Commandant (G-MSE) for appeals involving the recognition of a
classification society.

(5) Commandant (G-MW) for appeals involving decisions or actions of
the Director, Great Lakes Pilotage.

(i) Failure to submit a formal appeal in accordance with the
procedures and time limits contained in this subpart results in the
decision or action becoming final agency action.

(j) Any decision made by the Commandant, or by the Assistant
Commandant for Marine Safety and Environmental Protection, or by an
office chief pursuant to authority delegated by the Commandant is final
agency action on the appeal.

[CGD 88-033, 54 FR 50376, Dec. 6, 1989, as amended by CGD 89-007, CGD
89-007a, 58 FR 60265, Nov. 15, 1993; CGD 96-041, 61 FR 50725, Sept. 27,
1996; CGD 97-057, 62 FR 51040, Sept. 30, 1997; CGD 95-010, 62 FR 67532,
Dec. 24, 1997; USCG-1998-4442, 63 FR 52188, Sept. 30, 1998; USCG-1999-
6216, 64 FR 53222, Oct. 1, 1999; USCG-2000-7790, 65 FR 58457, Sept. 29,
2000; USCG-2001-8894, 66 FR 31844, June 13, 2001]

# EXHIBIT 4.

**EXHIBIT 4.**

| | | |
|---|---|---|
| **U.S. Department of Homeland Security** **United States Coast Guard** | **Commanding Officer United States Coast Guard National Maritime Center** | 100 Forbes Drive Martinsburg, WV .25404 Staff Symbol: NMC-0 Phone: (304) 433-3480 Fax: (304) 433-3416 |

16721/1622289

## MEMORANDUM

**APR 2 9 2011**

From: A. S. LLOYD, CAPT
      CG NMC

Reply to
Attn of: M. Eichelberger

To:    CG 54
Thru:  CG 5434

Subj:  **APPEAL FOR COTA, JOHN J.; 1622289:** APPEALING MEDICAL WAIVER·
       DENIED DUE TO HISTORY OF MULTIPLE PROBLEMS

Ref:   (a) 46 CFR 10.209 (d) (3)
       (b) 46 CFR 10.215
       (c) 46 CFR 10.211 (g)
       (d) 46 CFR 10.227
       (e) 46 CFR 10.219

1. An evaluation of the Subject Named Mariner's (SNM) renewal Merchant Mariner Application was conducted in accordance with Federal Regulations and the Mariner Credential Program's Mission Management System (MMS). I have determined that SNM does not satisfactorily meet all of the safety, suitability, and medical requirements for renewal of his Merchant Mariner Credential (MMC) in accordance with 46 CFR 10.211 & 10.215

2. SNM requested issuance of a renewal of License and MMD without meeting the requirements of references (a) and (b). SNM did not meet the regulatory requirements and the application was denied for the following medical reason below:

   Medical Evaluation:
   It has been determined that SNM does not meet the requirements of reference (a), 46 CFR 10.215 to renew his credentials. Specifically, it has been determined that the applicant does not meet the requirements of 46 CFR 10.209 (d) (3). The application for the renewal of his MMC was denied in January 2011 due to the severity of his OSA, which required the use of the stimulant, Provigil. Therefore, a medical waiver was denied.

3. In order to provide the SNM with a complete National Maritime Center (NMC) evaluation, the following determinations are also provided:

   Safety and Suitability Evaluation:
   The S&R NCOE has contacted the OCMI (Sector San Francisco) and they are in full agreement that the decision to issue or deny SNM's renewal request rest's fully within the NMC. The NMC has determined that the SNM does not meet the Safety and Suitability

Page 1 of 3

16721/1622289

requirements of reference (c) to renew his credentials. The review of his application and criminal records revealed the following conviction for a criminal violation of environmental laws. I have denied his application per Title 46 Code of Federal Regulations (CFR) Table 10.211(g). A one-year assessment period has been applied from the date of his release date from incarceration which was August 6, 2010. His assessment period will end August 6, 2011.

<u>Professional Qualification Evaluation:</u>
The NMC has determined that SNM does meet all professional requirements in accordance with reference (d) to renew his credentials. SNM holds officer endorsements as Master 1600 Oceans (OC), Master of Towing OC and Western Rivers (WR), Third Mate Unlimited OC, First Class Pilot (FCP), and Radar Observer. His rating endorsements consist of Able Seaman Unlimited, Wiper, and Steward Dept (FH). SNM held STCW but did not request on application to renew. SNM has not met requirements of reference (d) by not submitting proof of ongoing training and drills or completion of a practical demonstration before a designated examiner to renew Master of Towing OC and WR. Additionally, he has not met the requirements of reference (e). If all other requirements are met SNM would be required to pay an issuance fee of $45.

4. In order to remain consistent with Federal Regulations and the Mariner Credential Program's MMS, I recommend you uphold my determination. Should final agency action overturn my decision, request you clarify the appropriate application of the specific regulation(s) and/or policy you used in overturning or partially granting the mariner's appeal. I further request the NMC is not directed to apply to all mariners in similar circumstances until/unless public guidance has been published.

5. If you have any questions regarding this matter, please contact Michelle Eichelberger at (304) 433-3618 or at Michelle. D. Eichelberger@uscg.mil.

#

Enclosures: (1) Merchant Mariner Application, dated 21-APR-2010
(2) Physical Examination CG -719K, dated 13-OCT-2009
(3) Amplified Information letter, dated 07-JUL-2010
(4) Amplified Information response, dated 08-SEP-2010
(5) Letter from John F. Meadows, dated 27-SEP-2010
(6) Letter from John F. Meadows dated 29-SEP-2010
(7) Letter from John F. Meadows dated 29-SEP-2010
(8) First Third Party Authorization, dated 15-OCT-2010
(9) Letter from John F. Meadows, dated 05-NOV-2010
(10) Letter from Leopold J. Chanco, dated 01-DEC -2010
(11) Letter from Leopold J. Chanco, dated 03-DEC-2010
(12) Denial Letter, dated 24-JAN-2011
(13) Letter from Lance Barlas, MD, dated 03-FEB-2011
(14) Fax from John F. Meadows, request for reconsideration, dated 11-FEB-2011
(15) Reconsideration denial letter, dated 28-FEB-2011
(16) Letter from John F. Meadows, dated 11-MAR-2011

16721/1622289

(17) Letter from John F. Meadows, dated 25-MAR-2011
(18) Letter from J. Meadows & L. Chanco, Request for Appeal, dated 30-MAR-2011
(19) Second Third Party Authorization, dated 06-APR-2011
(20) Continuity renewal statement, dated 06-APR-2011
(21) Letter from J. Meadows & L. Chanco, dated 14-APR-2011