IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CAPTAIN JOHN J. COTA,

    Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

No. C 13-00576 JSW

**ORDER GRANTING MOTION TO DISMISS**

This matter comes before the Court upon consideration of the motion to dismiss filed by Defendants United States of America, United States Coast Guard ("USCG" or "Coast Guard"), and United States Coast Guard Commandant ("Commandant") (collectively, "Defendants"). The Court finds the motion suitable for resolution without oral argument and vacates the hearing date of December 6, 2013. *See* N.D. Civ. L.R. 7-1(b). Having considered the parties' arguments and the relevant legal authority, the Court hereby GRANTS Defendants' motion to dismiss.[1]

**BACKGROUND**

Cota challenges the final decision by the Commandant of the Coast Guard to deny the renewal of his Merchant Mariner Credential ("MMC") as arbitrary, capricious, or an abuse of discretion under the Administrative Procedure Act ("APA").

Cota was the pilot of the container ship Cosco Busan when it allided with the fenders on the San Francisco Oakland Bay Bridge. (Compl., ¶ 14.) Due to the allision, part of the hull of

---

[1] The Court GRANTS the requests for judicial notice ("RJN") filed by Defendants and Plaintiff Captain John J. Cota ("Cota"). *See* Fed. R. Evid. 201.

the ship was ripped off and approximately 53,000 gallons of oil spilled into the San Francisco Bay. (*Id*.) Cota pled guilty to two criminal misdemeanor charges for oil pollution and served ten months in federal prison. (*Id*., ¶ 16.) In the plea agreement, Cota admitted that he was at fault, but not sole fault, in causing the allision. (*Id*., ¶ 17.)

In December 2007, the Coast Guard offered Cota a choice between a Suspension & Revocation proceeding with a "Charge of Physical Incompetence" or entering into a Voluntary Deposit Agreement and depositing his credentials with the Coast Guard. (*Id*., ¶ 19.) Cota chose to deposit his credential. (*Id*., ¶ 20.) On January 6, 2010, Cota's MMC expired. (*Id*., ¶ 29.) Pursuant to 46 C.F.R. § 10.277(f), Cota had one year to seek a renewal of his MMC.

On June 28, 2010, Cota submitted an application for renewal of his MMC. (*Id*., ¶ 30.) In his cover letter to his application, Cota addressed his guilty plea to the two misdemeanor charges and argued that there "is no reliable, probative, substantial evidence proving that Capt. Cota was unable to perform his required duties due to professional or physical incompetence...." (Defendants' RJN, Ex. 5 at pp. 6, 10-11.) Cota further argued that his guilty plea related to the allision "is not material to his license's return and renewal." (*Id*.) Cota also addressed the allegations that he lied on his 2006 and 2007 physical exams. (*Id*. at p. 7.)

On January 24, 2011, the National Maritime Center of the USCG ("NMC") declined to renew Cota's MMC. (*Id*., ¶ 33.; *see also* Cota's RJN, Ex. C.)

On February 28, 2011, Captain A.S. Lloyd, the Commanding Officer of the National Maritime Center of the USCG ("NMC"), held that Cota's obstructive sleep apnea was so severe that it could not be controlled by CPAP alone and required him to use a stimulant to maintain adequate functioning. The NMC further noted that his "reliance of daily medication to maintain adequate alertness is concerning and as such, [his] condition posses a risk to maritime and public safety." The NMC also noted that Cota's right humeral shift fracture was not sufficiently healed at that time to meet the Coast Guard's "requirements even for entry level positions." Therefore, Captain A.S. Lloyd upheld the initial determination by the MNC to deny his application for renewal on the grounds that Cota was not medically qualified. (Compl., Ex. 3.)

On April 29, 2011, Captain Lloyd forwarded Cota's appeal to the Commandant. In the forwarding memorandum, Captain Lloyd stated that he determined that Cota "does not satisfactorily meet all of the safety, suitability, and medical requirements for renewal of his [MMC]...." He further stated, under the heading of "Safety and Suitability Evaluation" that a review of Cota's application and criminal records revealed a conviction for a criminal violation of environmental laws. Finally, Captain Lloyd determined that Cota "does not meet all professional requirements" due to his failure to submit "proof of ongoing training and drills or completion of a practical demonstration before a designated examiner to renew Master of Towing OC and WR." A one year assessment period was imposed on Cota from the date of his release from prison on August 6, 2010. (Compl., Ex. 4.)

Cota received and reviewed this memorandum and sent a responding letter to the Commandant. (Compl., ¶ 44; *see also* Cota's RJN, Ex. G.) In this letter, Cota addressed the concerns regarding his safety and suitability, including the allusion of the Cosco Busan and his criminal violations for environmental laws. Cota further stated that he was not appealing the imposition of the assessment period. (Cota's RJN, Ex. G.)

On February 13, 2012, the Commandant denied Cota's appeal and determined that Cota was not a "safe and suitable" person to hold a MMC. In addition to Cota's failure to submit proof of his professional renewal requirements regarding his master of towing vessels, the Commandant determined that "Cota's role in the allision of the M/V COSCO BUSAN with the San Francisco Bay Bridge and his role in the grounding of the M/V PIONEER in 2006 demonstrate that he does not have the judgment, general knowledge, skill and proficiency necessary to hold an [MMC]." (Compl., Ex. 1.)

The Commandant further noted that Cota had not been fully honest in filling out medical forms submitted to the Coast Guard in 2006 and 2007. Cota failed to disclose some of the medications he was prescribed and was taking. Additionally, although Cota reported that he was taking various other drugs only occasionally, he later admitted that he refilled many of the prescriptions regularly. Moreover, in his 2010 application for renewal, Cota failed to reveal the

3

fact that he was issued a letter of warning in 2006 for the grounding of the Pioneer and was cited for operating a vessel in a negligent manner. Accordingly, the Commandant denied:

> Cota's appeal because he has demonstrated that he lacks the professional judgment and skill necessary to hold the credentials sought and because [the Commandant] determined that Captain Cota is not a safe and suitable person. His criminal conviction involving the failure to safely operate a vessel and his repeated pattern of failing to candidly and accurately complete applications which he then submitted to the Coast Guard demonstrate he cannot be entrusted with the duties and responsibilities for which he applied.

(Compl., Ex. 1.) The Commandant found that renewing Cota's credentials "presents a threat to the safety of life or property, is detrimental to good discipline, and is not in the best interests of the United States." (*Id*.)

## ANALYSIS

**A.   Applicable Legal Standards.**

**1.   Federal Rule of Civil Procedure 12(b)(1).**

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). When a defendant moves to dismiss a complaint or claim for lack of subject matter jurisdiction the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. *Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack on the jurisdiction occurs when factual allegations of the complaint are taken as true. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). The plaintiff is then entitled to have those facts construed in the light most favorable to him or her. *Id.*

A factual attack on subject matter jurisdiction occurs when defendants challenge the actual lack of jurisdiction with affidavits or other evidence. *Thornhill*, 594 F.2d at 733. In a factual attack, plaintiff is not entitled to any presumptions or truthfulness with respect to the allegations in the complaint, and instead must present evidence to establish subject matter jurisdiction. *Id.*

4

### 2. Federal Rule of Civil Procedure 12(b)(6).

Defendants also move to dismiss for failure to state a claim. A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 544. If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994),

5

*overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, the Court may consider documents attached to the complaint, or documents relied upon but not attached to the complaint, when the authenticity of those documents is not questioned, as well as other matters of which the Court can take judicial notice, without converting a motion to dismiss into a motion for summary judgment. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

**B.     Defendants' Motion.**

Cota brings a claim for violation of Due Process as well as a claim for violation of the APA. As the Court already held in the Order requiring further briefing, Cota does not and cannot state a claim for violation of the Due Process Clause because the decision not to renew his MMC was discretionary. Accordingly, the Court grants Defendants' motion to dismiss as to Cota's Due Process claim with prejudice. The Court will now address the merits of Cota's claim for violation of the APA, as well as Cota's claim for declaratory relief and for attorney's fees.

**1.     Jurisdiction to Review under the Administrative Procedure Act.**

Defendants contend that the Court does not have jurisdiction to review Cota's claim under the APA pursuant to 5 U.S.C. § 701(a)(2). The APA provides for judicial review of final agency actions, except to the extent "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). There is a "strong presumption that Congress intends judicial review of administrative action." *See Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000, 1003 (9th Cir. 1998) (quoting *Traynor v. Turnage*, 485 U.S. 535, 542 (1988)). The presumption may be overcome where there is "clear and convincing evidence of a contrary congressional intent" or "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Id.* (quoting *Board of Governors of Fed. Reserve Sys. v. Mcorp Fin., Inc.*, 502 U.S. 32, 44 (1991) and *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)) (internal quotation marks omitted). "The discretionary exception to judicial review applies if 'the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* (quoting *Heckler*, 470 U.S. at 830).

6

"Whether any particular statute meets this standard is statute specific and relates to the language of the statute and whether the general purposes of the statute would be endangered by judicial review. ... Thus, the mere fact that a statute contains discretionary language does not make agency action unreviewable." *Beno v. Shalala*, 30 F.3d 1057, 1066 (9th Cir. 1994) (internal citation and quotation marks omitted). For example, in *Webster v. Doe*, 486 U.S. 592 (1988), the Supreme Court relied on both the discretionary language of the statute, as well was the "overall structure" of the statute, and the fact that national security is "an area of executive action in which courts have long been hesitant to intrude." *Id*. at 600. The statute provided that the Director "shall *deem* such termination necessary or advisable in the interests of the United States." *Id.* (quoting the statute at issue) (emphasis added). The Court noted that "[s]hort of permitting cross-examination of the Director concerning his views of the Nation's security and whether the discharged employee was inimical to those interests," the Court found no basis upon which a reviewing court could properly assess the Director's decision.

Pursuant to the statute at issue, the Secretary of the Coast Guard may issue licences to applicants for masters, mates, and engineers "found qualified as to age, character, habits of life, experience, professional qualifications, and physical fitness...." 46 U.S.C. 7101(c)(1). The statute further provides that the Secretary "may review the criminal record of an individual who applies for a license or certificate of registry." 46 U.S.C. 7101(h). Defendants argue because the statute provides broad discretion to consider an applicant's criminal record, that there is no law to constrain the discretion of the Coast Guard. The Court disagrees. The type of discretion here is not as broad as the discretion provided by statutes found to preclude judicial review. *See, e.g., Webster*, 486 U.S. at 600 (statute at issue authorized Director to authorize terminations he or she "deemed" appropriate); *Helgeson*, 153 F.3d at 1003 (statute at issue authorized Secretary to make loan "when, *in the judgment of the Secretary*, there is a reasonable prospect of repayment, and only to the applicants who *in the opinion of the Secretary* are unable to obtain financing from other sources ...."). Moreover, Defendants do not make any effort to demonstrate that the structure and purpose of the statute support a finding that judicial review is precluded.

7

Defendants also argue that review under the APA is precluded when "the agency's action requires a complicated balancing of a number of factors which are peculiarly within the agency's expertise, including the prioritization of agency resources, likelihood of success in fulfilling the agency's statutory mandate, and compatibility with the agency's overall policies." *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000) (quoting *Heckler*, 470 U.S. at 831). However, as noted by the Supreme Court, this exception to judicial review applies when a type of decision is generally or traditionally committed to an agency's absolute discretion, such as "an agency's decision not to prosecute or enforce." *Heckler*, 470 U.S. at 831. Defendants have not demonstrate that the Coast Guard's licensing decisions are traditionally committed to an agency's absolute discretion. Accordingly, the Court finds that it may review the agency action at issue under the APA.

### 2. Whether the Coast Guard's Decision was Arbitrary, Capricious, or an Abuse of Discretion.

Under the APA, agency actions will be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(a). A court "will reverse a decision as arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008). "[T]he granting of licenses to seamen involves the exercise of discretion by the Coast Guard. Therefore, [the Court's] review of the administrative determination is narrow and is limited to deciding whether there was a rational basis for the actions of the Coast Guard." *Soderback v. Siler*, 610 F.2d 643, 646 (9th Cir. 1980).

"To legally work aboard a United States merchant marine vessel, individuals must receive a merchant mariner credential ("MMC") from the National Maritime Center ("NMC"), the licensing authority of the United States Coast Guard." *Clifford v. United States Coast Guard*, 915 F. Supp. 2d. 299, 303 (E.D.N.Y 2013) (citing 46 C.F.R. §§ 10.209, 10.225). The

8

1  Coast Guard may issue licenses to "applicants found qualified as to age, character, habits of life,
2  experience, professional qualifications, and physical fitness[.]" 46 C.F.R. § 7101(c). The Coast
3  Guard may consider the criminal record of an individual who applies for a license. 46 C.F.R. §
4  7101(h).

5  Before an MMC may be issued or renewed, the Coast Guard must make a "safety and
6  suitability" determination. 46 C.F.R. § 10.209(e)(1). "No MMC will be issued as an original or
7  reissued with a new expiration date, and no new officer endorsement will be issued if the
8  applicant fails the criminal record review as set forth in [46 C.F.R. § 10.211]." *Id*. The Coast
9  Guard may decline to renew an MMC "[w]hen a criminal record review leads the Coast Guard
10 to determine that an applicant is not a safe and suitable person or cannot be entrusted with the
11 duties and responsibilities of the MMC or endorsement applied for ...." 46 C.F.R. § 10.211(d).
12 The regulations define a "safe and suitable person" for the MMC as "a person whose prior
13 record, including but not limited to criminal record ..., provides no information indicating that
14 his or her character and habits of life would support the belief that permitting such a person to
15 serve under the MMC and/or endorsement sought would clearly be a threat to the safety of life
16 or property, detrimental to good discipline, or adverse to the interests of the United States." 46
17 C.F.R. § 10.107(b).

18 Cota does not argue that the ultimate decision not to renew his license was arbitrary,
19 capricious, or an abuse of discretion. As Cota concedes, the Court's review of the Coast
20 Guard's decision not to renew his license is narrow and is limited to decided whether there was
21 a rational basis for the actions of the Coast Guard. (Opp. at 7 citing *Soderback*, 610 F.2d at
22 646.) Nor does Cota dispute the facts relied upon by the Commandant in declining to renew
23 Cota's MMC, namely that he (1) proximately caused the Cosco Busan allision, (2) was
24 convicted of environmental crimes, (3) grounded the M/V Pioneer, (4) failed to disclose
25 information on Coast Guard forms in 2006 and 2007, and (5) made a false statement on the
26 renewal application at issue in this case. In an Order requesting supplemental briefing, the
27 Court noted that Cota does not appear to contest the merits of the Coast Guard's ultimate

9

decision not to renew his license. Notably, in his response, Cota did not argue that the Court had misconstrued his contentions.

Instead, Cota makes a procedural argument that the Commandant exceeded the scope of the appeal by considering his professional qualifications and safety and suitability, instead of merely his medical evaluation.[2] Cota argues that the Coast Guard "deviat[ed] from its own regulations and policies in processing Cota's renewal application," and the Commandant exceeded the scope of Cota's appeal "by unexpectedly re-assessing Cota's professional qualifications and safety and suitability, thereby usurping the NMC's functions." (Opp. at pp. iv and 1.) However, Cota failed to allege or argue what the specific regulations and policies are that the Defendants purportedly violated.

The Court issued an Order requesting supplemental briefing in order to provide Cota with an opportunity to state what specific regulations and policies were violated and how, such procedural deviations violated the APA. In response, Cota cites to 46 CFR § 10.237(b), which provides that "[a]ny person directly affected by a decision or action taken under this subchapter, by or on behalf of the Coast Guard, may appeal ..." and to 46 CFR § 10.211(i) which provides that "(i) If a person with a criminal conviction applies before the minimum assessment period ... has elapsed, then the applicant must provide, as part of the application package, evidence of suitability for service in the merchant marine." Cota argues that as a result of the Coast Guard's actions, he "never had an opportunity to explain (1) the inadvertent omissions from his 2006 or 2007 physical exams, (2) the insignificance of the PIONEER grounding, or (3) explain his suitability to serve in light of his criminal convictions." (Cota's Suppl. Br. at 9.) However, as the Cota himself alleges, the NMC raised some of these concerns in the letter dated April 29, 2011. (Compl., ¶ 43.) Moreover, Cota responded to these concerns regarding his safety and suitability, including the allusion of the Cosco Busan and his criminal violations for environmental laws and the omissions from his 2006 or 2007 physical exams and the Pioneer grounding. (Defendants' RJN, Ex. 5; Cota's RJN, Ex. G.) Additionally, in light of Cota's

---

[2] Cota also argues that the NMC improperly imposed a one year assessment period, but Cota explicitly waived any appeal of this issue. (Compl, ¶ 44; Cota's RJN, Ex. G.)

10

1  failure to contest the merits of the Coast Guard's ultimate decision, Cota fails to demonstrate
2  that any procedural deficiencies, to the extent there were any, constituted prejudicial error.
3   Therefore, the Court finds that Cota has not stated, and could not state, a claim for
4  violation of the APA. The Court provided Cota with an additional opportunity to explain the
5  basis of his claim and argue what facts he had alleged or could allege in support of his APA
6  claim. Cota was not able to articulate facts which, if true, would support a meritorious claim.
7  Moreover, based on the documents from which the Court took judicial notice, it is clear that
8  giving leave to amend this claim would be futile. Accordingly, the Court grants Defendants'
9  motion to dismiss Cota's APA claim without leave to amend.

### 3. Cota's Remaining Claims.

Defendants also move to dismiss Cota's claims for declaratory relief and for attorney's fees. "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. State of Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). A court may decline to hear a claim for declaratory relief if adjudication of the issues raised in other claims would fully and adequately determine all matters actually in controversy between the parties. *See Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707-08 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action."). In his claim for declaratory relief, Cota merely incorporates the allegations of his other claims and simply alleges that "[t]his Complaint raises an actual controversy with the meaning of 28 U.S.C. § 2201 and this Honorable Court is therefore empowered to declare the rights of the parties." (Compl., ¶¶ 69-70.) His claim for declaratory relief is entirely commensurate with the relief sought by his claims for violation of Due Process and the APA. Thus, the Court finds that Cota's declaratory relief claim is duplicative and unnecessary. Accordingly, the Court grants Defendants' motion to dismiss as to Cota's claim for declaratory relief.

Lastly, Defendants move to dismiss Cota's claim for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The "EAJA does not provide an

independent cause of action for litigants in federal court; instead, it simply 'authorizes the payment of fees to the prevailing party in an action against the United States.'" *Thomas v. Paulson*, 507 F. Supp. 2d 59, 62 n.2 (D.D.C. 2007) (quoting *Scarborough v. Principi,* 541 U.S. 401, 405 (2004) (citation omitted). Because the Court is dismissing Cota's other claims without leave to amend, his EAJA claim cannot remain as an independent claim. Accordingly, the Court grants Defendants' motion to dismiss as to Cota's EAJA claim as well.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Cota's claims without leave to amend. The Court shall enter a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: December 2, 2013



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE